130 N.J. Super. 401 (1973)
327 A.2d 440
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
MARTIN J. WOOD, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued June 11, 1973.
Decided October 15, 1973.
*404 Before Judges COLLESTER, LEONARD and HALPERN.
Mr. Peter P. Cascone, Jr., Designated Counsel, argued the cause for appellant (Mr. Stanley C. Van Ness, Public Defender, attorney).
Mr. Jared L. McDavit, Deputy Attorney General, argued the cause for respondent (Mr. George F. Kugler, Jr., Attorney General of New Jersey, attorney).
The opinion of the court was delivered by COLLESTER, P.J.A.D.
Defendant was indicted and tried for the murder of Sally Gulden. He was found guilty by a jury of murder in the second degree and sentenced to a prison term of 15-18 years. This appeal followed.
On September 25, 1970, at approximately 6:35 P.M., members of the Trenton Fire Department responded to a fire at 218 Whittlesey Road, a one family house located in a row of adjoining houses. After gaining entrance by breaking the locks on the front door they found the dead body of Sally Gulden on the floor near a sofa in her living room. They also found defendant unconscious on the kitchen floor near a wall telephone, the receiver of which had been removed. He was taken to a hospital where he remained unconscious for eight to twelve hours due to smoke inhalation which aggravated a condition of chronic emphysema from which he suffered.
After the living room sofa, the point of origin of the fire, was removed and the premises were ventilated an automatic pistol and two spent shell casings were discovered on the floor near where Mrs. Gulden's body was found. An autopsy was performed which revealed that she had been shot five times and had died from gunshot wounds and not from the effects of the fire.
The fire was discovered by Nicholas Urbano. He testified he had a date to take Mrs. Gulden to the movies on the evening of September 25 and attempted to reach her by telephone *405 after he finished work at 6:20 P.M. He said that no one responded when he repeatedly said "hello" but he could hear loud music playing in the background. He dialed again and received a busy signal. Urbano testified he drove to the Gulden house where he observed that a front picture window was blackened and smoke was coming from a second story window. He unlocked the front door with a key Mrs. Gulden had given him but could not gain entrance because a chain lock was latched inside. Urbano called to Mrs. Rebecca, a next door neighbor, and told her to call the fire department. He then went to the rear of the house where he met Dominick Rebecca. He opened the rear door with a key but neither he nor Rebecca could enter the kitchen because of the dense smoke. At this point the firemen arrived. After the fire was extinguished police found that a record was on the stereo turntable and the volume control had been turned up.
Following an investigation by the police defendant was charged with the murder. The theory of the State's case was that defendant shot and killed Mrs. Gulden because she had rejected him as a suitor and resumed her previous relationship with Urbano, a former boy friend. The case was based on circumstantial evidence and inculpatory admissions allegedly made to the police.
The State produced evidence to show that blood found on defendant's clothes matched the blood type of the victim; that defendant owned an automatic pistol; that he arrived at the Gulden house before the fire occurred; that Mrs. Gulden had told her daughter and sister she intended to break off her relationship with defendant and marry Urbano, and (contrary to defendant's subsequent testimony that he had a key to the house) that Urbano had changed the door locks on the house one or two days before the fire.
After the State's direct case was completed the defendant produced testimony by several witnesses and testified on his own behalf. His story was that he and Sally Gulden had planned to drive to Maryland to get married after he finished work as a part-time bartender on the evening of September *406 25. At about 5:45 P.M. he received a telephone call from Mrs. Gulden asking him to come over and take her with him to work because Urbano had threatened to stop the marriage and she was afraid to be alone in the house. He arrived at the Gulden house at 6:25 or 6:30 P.M. and let himself in with a key to the back door. He said that when he entered he was confronted with dense smoke. He managed to reach the living room where he tripped over Mrs. Gulden's body. He tried but was unable to lift her. He then groped his way to the telephone to call for help when he was overcome by the smoke.
Wood testified he first learned of Mrs. Gulden's death on September 28 when detectives came to the hospital and served him with a complaint charging him with murder. He denied that he ever owned or possessed a gun. He denied giving any statements to the police before or after his release from the hospital. He said he recalled only that a detective mentioned something about a gun while he was in the hospital and he told the detective he would not discuss it and that he wanted a lawyer. He also said that Mrs. Gulden had given him a house key a week or two before the fire when she had the door locks changed.
During the State's rebuttal Dominick Rebecca said that he saw Urbano, in Mrs. Gulden's presence, change the door locks the day before the fire. Detective Sergeant McGann also testified as a rebuttal witness for the State. He said he interviewed Wood twice in the hospital on September 28. On the first occasion Wood told McGann he arrived at the Gulden house at about 5:20 P.M. and had a drink. On the second visit McGann served defendant with a complaint charging him with murder. He asked Wood if he knew anything about a weapon and defendant answered that he owned a small black automatic. Wood was released from the hospital on October 1 and taken to the Detective Bureau where McGann again questioned him. The detective testified that the defendant told him he had arrived at the Gulden house about 5:15 P.M. and he and Sally Gulden had a few drinks. *407 He said the last thing he remembered, about 5:45 P.M., was sitting on a sofa with his arm around Mrs. Gulden.
No contention is made by defense counsel on this appeal that the verdict was contrary to the weight of the evidence. He does, however, advance several points of alleged legal errors which, he contends, requires a reversal and a new trial. The first point raised by defense counsel asserts that an oral statement defendant gave Lieutenant Worob while a patient in the hospital was improperly admitted into evidence. The lieutenant's testimony was produced by the State, at defense counsel's insistence, during a voir dire hearing held to determine whether statements allegedly made later to McGann were admissible as evidence.
Lieutenant Worob testified that he and another detective interviewed defendant in the hospital at 5:30 A.M. on the day after the homicide. He advised defendant of his constitutional rights and asked if he would tell what had happened at the Gulden house. Wood answered that he was alone with Sally Gulden some time after 5 P.M. and they had a few drinks together. Defendant then said he did not wish to say anymore  that he wanted an attorney. The questioning was stopped and the officers left. Lieutenant Worob testified that during the brief interview the defendant was alert, understood what the lieutenant told him, and was able to answer clearly and intelligently.
Thereafter the State withdrew its request for a ruling as to statements made to McGann and moved to have the statement made to Worob admitted as evidence. Defense counsel objected contending that when the defendant said he wanted an attorney his entire statement was inadmissible. He said he had not anticipated the State's motion and, although it was his fault, "I requested to have Dr. Marshall, his attending physician * * * [testify]." The court ruled that defendant's statement made voluntarily and was admissible as evidence. The court found that defendant fully understood his constitutional rights as explained by the lieutenant; that he understood the question asked and gave an intelligent response, *408 and that his lucid condition was evidenced by his request for an attorney.
Defense counsel argues that defendant was denied a full voir dire hearing. He claims he was unable to call Dr. Marshall to testify that defendant was unconscious at 5:30 A.M. on September 26 because he had anticipated that the State was trying only to prove the admissibility of statements made to McGann, and that Lieutenant Worob's testimony was given only to show defendant had asked for an attorney.
We are satisfied the argument lacks merit. It is obvious that defense counsel, as a trial tactic, insisted the State produce Lieutenant Worob to show that defendant asked for an attorney. We agree with the conclusion of the trial court that if defendant had the mental acumen to stop answering questions and say that he wanted an attorney he was mentally capable of waiving his constitutional rights when immediately prior thereto he had answered the officer's questions. Moreover, we find no abuse of discretion in the court's disregard of defense counsel's eleventh hour statement that he had intended to call the treating physician. The lieutenant's testimony regarding defendant's mental condition, which was subjected to cross-examination, fully supported the trial court's finding that defendant's statements were knowingly and voluntarily made.
Defense counsel next claims the court erred in permitting part of a statement to be read to the jury which Jack Gulden, the victim's son, gave to the police five days after the homicide. The statement described two incidents which occurred while Gulden was living with his mother prior to June 1, 1970.
Gulden testified that on one occasion, following an argument between his mother and defendant, he had ordered defendant to leave the house. However, he said he had no present recollection of the other incident described in the statement where he stated that he had forcibly ejected defendant from the house and discovered that Wood had a gun in his possession  a small automatic pistol. After Gulden read *409 his statement he said it was true at the time he gave it. When he was questioned by the court out of the jury's presence he said the incident must have occurred but he could not recall it. However, he said he did recall seeing the gun but could not remember when. The trial court, over defendant's objection, ruled that the portion of the statement which Gulden did not remember could be read to the jury under the doctrine of "past recollection recorded," as provided for in Evidence Rule 63(1)(b).
Defendant argues that the statement should not have been read because Gulden did not recall any part of the incident, there was no proof that the events were fresh in the witness's mind when the statement was made, and its admission was barred under Evidence Rule 55.
Evidence Rule 63(1) provides:
A statement is admissible if previously made by a person who is a witness at a hearing, provided it would have been admissible if made by him while testifying and the statement:

* * * * * * * *
(b) Concerns a matter as to which the witness has insufficient present recollection to enable him to testify fully and accurately and contained in a writing which (i) was made at a time when the fact recorded in the writing actually occurred or was fresh in the witness's memory, (ii) was made by the witness himself or under his direction or by some other person for the purpose of recording the witness's statement at the time it was made, and (iii) is offered after the witness has testified that the statement he made was a true statement of such fact, provided that where the witness remembers only a part of the contents of a writing, the part he does not remember may be read to the jury but shall not be introduced as a written exhibit over objection; * * *
We are satisfied that the trial court properly permitted that part of the statement which Gulden could not recall to be read verbatim to the jury. It is clear that Gulden remembered part of the contents of the statement that he gave to the police and also recalled seeing the gun referred to in the statement. While it is not clear from the record when the incident involving the gun took place it apparently occurred sometime between the first week of April 1970 when *410 Mrs. Gulden was discharged from a hospital and June 1, 1970 when Gulden moved out of his mother's home. Defendant made no objection below that incident was not fresh in the witness's mind. It seems implicit that the incident was fresh in Gulden's memory when the statement was recorded or he would not have given a detailed account of it to the police.
We find no merit in defendant's contention that the facts contained in the statement were inadmissible under Evidence Rule 55. They were clearly admissible to prove "some other fact in issue" in the case, namely, that defendant owned or possessed a handgun similar to that found in the Gulden house.
The next point advanced by defense counsel charges it was error to admit testimony by Sally Ann Apple, the victim's daughter, that she had been told prior to her mother's death that defendant had struck her mother. The record indicates Mrs. Apple testified that on one occasion defendant had punched her mother in the mouth and knocked her down in a parking lot because of her attention to another man. She said her mother was brought to her apartment hysterical with bruises on her head. When it became apparent that Mrs. Apple had not witnessed the assault which she described defense counsel objected and moved that the testimony be stricken. The trial judge ruled that he would allow the testimony of the witness's visual observation but the jury should disregard the other testimony. Defense counsel conceded that Mrs. Apple could testify to her visual observation and made no further objection to the ruling. Defense counsel now argues the judge's instructions were inadequate. While the instructions could have been more clearly expressed, we find no plain error mandating a reversal. State v. Macon, 57 N.J. 325, 333 (1971).
The final point raised by defense counsel is that the trial judge failed to charge, as requested, that Sergeant McGann's rebuttal testimony of admissions made by the defendant could be used only to impeach defendant's credibility *411 as a witness. While the judge did not specifically refer to McGann's testimony he instructed the jury it should consider the oral statements allegedly made by the defendant and first determine whether they were made voluntarily after defendant had knowingly waived his constitutional rights. The judge then told the jury that evidence, showing that a witness had previously made an inconsistent statement, could be considered solely for the purpose of judging the witness's credibility.
Defense counsel told the judge he had no objection to the charge. The failure to object indicates that experienced trial counsel did not consider the charge to be erroneous. See State v. Hale, 45 N.J. 255, 264-265 (1965); State v. Macon, supra, 57 N.J. at p. 333. Moreover, both defense counsel and the prosecutor during their summations told the jury that McGann's testimony was not to be considered evidence of any fact in the case  that it was introduced only to impeach defendant's credibility. We find no basis for plain error.
The judgment of conviction is affirmed.
HALPERN, J.A.D. (dissenting).
I would reverse defendant's conviction, which rests solely upon circumstantial evidence, and remand for a new trial because (1) the trial court improperly permitted Jack Gulden's statement which referred to defendant's having a gun and quarrelling with his mother, Sally Gulden, to be read to the jury as substantive evidence under the "past recollection recorded rule," and (2) the admission of Sally Ann Apple's hearsay testimony of a beating administered by defendant to her mother, Sally Gulden, was prejudicial.
The testimony of Jack Gulden and Sally Apple was a vital part of the State's circumstantial case because their testimony (1) linked defendant with a gun, and (2) indicated that defendant had, on previous occasions, quarreled and assaulted Sally Gulden. While a jury verdict may properly rest upon circumstantial evidence (State v. Fiorello, 36 N.J. *412 80 (1961), cert. den. 368 U.S. 967, 82 S.Ct. 439, 7 L.Ed.2d 396 (1962)), nevertheless, an appellate court should scrupulously canvass the record in a capital case to determine whether trial errors were sufficiently prejudicial to deny defendant a fair trial. People v. Rosario, 9 N.Y.2d 286, 213 N.Y.S.2d 448, 173 N.E.2d 881 (Ct. App. 1961), cert. den. 368 U.S. 866, 82 S.Ct. 117, 7 L.Ed.2d 64 (1961); 5 Am. Jur.2d, Appeal and Error § 779 (1962).
It is necessary, at this point, to supplement the majority's recital of the facts to point up the weakness of the State's case in that the proofs could support the thesis that one of its own witnesses was involved. Nicholas Urbano and defendant were suitors of Sally Gulden. Urbano had previously made gifts to her of fur coats, jewelry, various items of household furniture, a car and substantial amounts of money. He also gave gifts and financial support to Jack Gulden and Sally Apple. Admittedly, he had previously quarreled with Sally Gulden because of her relationship with defendant. He had allegedly called her three times during the day of and prior to the fire concerning a planned movie date for that night. He allegedly arrived during the height of the fire and was instrumental in having a neighbor call the fire department. Instead of staying there to ascertain whether Sally Gulden was in the burning building, he drove home, a distance of about two miles, to telephone Sally Ann Apple to tell her about the fire, change his soiled shirt and get a different handerchief. Parenthetically, the police must have suspected Urbano's story because they examined his clothing. They found some blood on his shirt and handkerchief but insufficient to run a grouping test on identity. While Urbano originally told the police he went home to change his shirt because it was soiled by soot and smoke, at trial when shown the shirt admitted it was clean of soot.
Sally Gulden died on September 25, 1970. The police obtained a written statement from Jack Gulden on September 30, 1970, which the police requested and prepared, with reference to an alleged quarrel between defendant and Sally *413 Gulden which took place some time between early April and June 1, 1970. In the statement Gulden also indicated, among other things, that defendant at the time of the quarrel had a small automatic pistol in his possession. When testifying at the trial, he could not recall the incident nor was his memory refreshed when shown the statement. Nevertheless, the court permitted the statement to be read to the jury as substantive proof of its contents under the "past recollection recorded rule," Evidence Rule 63(1)(b).
Since the statement was given to the police, at their behest, either four or six months after the alleged event, it was not "made at a time when the fact recorded in the writing actually occurred or was fresh in the witness's memory." Evidence Rule 63 (1) (b); 3 Wigmore, Evidence § 745, (Chadbourn rev. 1970); McCormick, Evidence § 299-303, pp. 712-716 (1972); Maxwell's Executors v. Wilkinson, 113 U.S. 656, 658, 5 S.Ct. 691, 28 L.Ed. 1037 (1885); Gigliotti v. United Illuminating Company, 151 Conn. 114, 193 A.2d 718 (Sup. Ct. of Errors of Conn. 1963). In Gigliotti, a statement made six weeks after the event was excluded as a past recollection recorded event. The wisdom of requiring the statement to have been made when the fact recorded actually occurred, or was fresh in the declarant's memory, is pointed up in the instant case. It is logical to infer that if a son knows a man with a gun is quarrelling with his mother, and he ejects the assailant from the house, he would not forget that incident. It is incredible that Jack Gulden remembered the gun incident on September 30, 1970, when he told the police about it, but had no recollection of it during the trial in September 1971. In my view the trial court improperly exercised its discretion in allowing the statement to be read to the jury as a "past recollection recorded."
If anything, the factual pattern here involved with Gulden's statement, is nothing more than a recantation by Gulden. Under such circumstances, the State's only remedy is to neutralize his testimony under appropriate court instruction. *414 Rules of Evidence 20; State v. Gallicchio, 44 N.J. 540, 545-546 (1965).
Sally Ann Apple testified that she had been told by a man that her mother had been beaten by defendant (on an occasion prior to September 25, 1970), and she had seen her mother later that day in an hysterical condition with bruises on her head. The hearsay testimony concerning the alleged beating violated defendant's Sixth Amendment right to confront the witnesses against him. State v. Bankston, 63 N.J. 263 (1973). In ruling on defense counsel's objections to this line of questioning the trial court presumably intended to let Apple's testimony concerning her visual observations be considered by the jury, but to have the jury disregard the hearsay concerning the beating. However, all the trial court said to the jury was "[a]s to how they occurred or why they occurred and the jury is to disregard the other testimony." No further cautionary instructions were given.
Such instructions were inadequate to eradicate the prejudicial effect of the hearsay testimony. It is difficult, if not impossible, to know what the trial court meant or how the jury interpreted what he said. See "The Limiting Instruction  Its Effectiveness and Effect," 51 Minn. L. Rev. 264 (1956). Having permitted Apple's testimony to stand as to her mother's condition, what else could the jury do but infer that she had been assaulted by defendant? Even impeccable instructions to disregard prejudicial testimony will not always serve that purpose. See Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). The burden was on the State to prove that no possible injury resulted to defendant. State v. Samurine, 47 N.J. Super. 172 (App. Div. 1957), rev'd on other grounds 27 N.J. 322 (1958). As stated by the court:
In determining whether prejudicial testimony has been eradicated by prompt trial court action or, on the other hand, is so harmful that it cannot be eliminated except by declaring a mistrial, the burden is on the State to prove no possible injury to defendant. The criterion is not whether the evidence, shorn of the wrongful testimony, is sufficient *415 to support a conviction, but rather whether the prejudicial remarks, viewed against the entire setting of the case, may have possibly affected the jury's deliberations. All doubts must be resolved in favor of the defendant. 47 N.J. Super. at pp. 181-182
In my view defendant suffered substantial prejudice, and the State failed to carry the burden of showing no injury resulted to defendant.
As previously indicated, since defendant's conviction rested on weak circumstantial evidence, the admission into evidence of the improper and prejudicial testimony of Jack Gulden and Sally Ann Apple deprived defendant of a fair trial requiring a reversal of the conviction and a remand for a new trial. This makes it unnecessary for me to pass upon the other issues raised by defendant.