STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v.
MARTIN J. WOOD, DEFENDANT-APPELLANT.

Argued September 9, 1974—Decided October 22, 1974.

*Mr. Peter P. Cascone, Jr.,* argued the cause for appellant
(*Mr. Stanley C. Van Ness,* Public Defender, attorney).

*Mr. Lowell Espey,* Deputy Attorney General, argued the
cause for respondent (*Mr. L. Steven Pessin,* Deputy Attorney
General, of counsel and on the brief; *Mr. William F. Hyland,* Attorney General of New Jersey, attorney).

PER CURIAM. Defendant Martin J. Wood was convicted of second degree murder for the shooting death of Sally Ann Gulden and was sentenced to a term of 15 to 18 years in State Prison. On appeal to the Appellate Division his conviction was affirmed in a majority opinion. 130 *N. J. Super.* 401 (1973). One judge dissented on the ground that the trial court made improper and inadequate rulings in two instances involving the admissibility of evidence, and that defendant was prejudiced thereby. Defendant has appealed to this Court as of right. *R.* 2:2–1.

■ We have reviewed the issues raised and find no substantial merit in any of them basically for the same reasons expressed in the majority opinion of the Appellate Division.

■ We have also, *sua sponte,* considered the weight of the evidence and are satisfied that the credible proofs fully support the finding of defendant's guilt.

Affirmed.

PASHMAN, J. (dissenting). I agree with Judge Halpern's dissenting opinion in the Appellate Division which concluded that defendant was deprived of a fair trial requiring a reversal of the conviction and a remand for a new trial. 130 *N. J. Super.* 401 (App. Div. 1973). Specific references to the trial record further support this dissent.

The prosecutor read to the jury as "past recollection recorded" a statement taken on September 30, 1970 from Jack Gulden, the victim's son, concerning a fight between the victim and defendant which allegedly occurred some time between early April and June 1, 1970. The following direct examination is the portion of the testimony on which the purported foundation for the reading of this highly damaging statement was laid:

Q Do you recall another incident that took place sometime between your mother and Mr. Wood?
A Another incident?
Q Yes.
A No, I can't.

Q Do you recall on September 30th, 1970 —

MR. CASCONE: Your Honor. The question was asked and it was answered and he said he doesn't recall another incident and now the prosecutor is prompting and puts a statement in front of a man so the man can look at the statement.

THE COURT: All right, would you rephrase the question?

\*     \*     \*     \*     \*     \*     \*     \*

Q Okay, did you make that statement, Sir?

A I suppose I did.

Q Do you recall giving that statement?

A I recall giving it, yes.

Q And you signed it?

A Yes.

Q And that was a true statement when it was made?

A Yes.

Q And do you recall stating that —

MR. CASCONE: Your Honor —

THE COURT: Well, does that statement refresh your memory as to any incident concerning —

THE WITNESS: I don't remember that particular incident.

THE COURT: You have no present recollection after reading the statement as to that incident?

THE WITNESS: No.

Q Do you remember stating —

MR. CASCONE: The question has been asked and answered.

THE COURT: He already said he has no present recollection even after reading the statement.

Thereafter, out of the presence of the jury, the State sought to "refresh" Gulden's memory. A reading of the transcript gives one an impression of confusion and uncertainty in the mind of this most important witness — the son of the victim. The trial judge noted in his ruling he "did have a little concern with it [Gulden's statement] by reason of the fact that the witness couldn't remember an event such as this which we might say normally would be etched in a person's mind." But the court concluded that this was a case for the application of "past recollection recorded" exception to the hearsay rule.

Rule 63(1)(b)(i) clearly requires a statement read at the trial as "past recollection recorded" to have been "made at a time when the fact recorded in the writing actually occurred or was fresh in the witness's memory." A statement made four or six months after the alleged event is not made at the

time when the event occurred, nor is there any evidence in this record to indicate that the events recounted were fresh in the witness's memory. Therefore the court should not have permitted the statement to be read. Even if the court were inclined to decide that the evidence was admissible, it should have been excluded by reason of *Evid. R.* 4. The statement tended to create a substantial danger of undue prejudice or of misleading the jury which outweighed its doubtful probative effect.

The effect of the hearsay testimony by Sally Ann Apple, the victim's daughter, was devastating. She testified to an assault by defendant upon her mother when in fact she had not witnessed this event. She related what some one had told her. After repeated objections, the trial judge merely said to the jury, "As to how they occurred or why they occurred [referring to bruises] and the jury is to disregard the other testimony." I am at a loss to understand what was meant; I do not believe the jury understood. The so-called limiting instruction was inadequate. It is naive to think that this error was curable in that fashion.

The cumulative effect of the erroneously admitted testimony — and particularly involving testimony of a son and daughter of the victim — was such that "[t]he impact was too great, the imprint too deep, the influence too persuasive, to be erased by the court's directive, no matter how explicitly given." *State v. Caccavale,* 58 *N. J. Super.* 560, 574 (App. Div. 1959). The doubts should have been resolved in favor of the defendant.

I would reverse the conviction and remand for a new trial.

*For affirmance* — Chief Justice HUGHES and Justices JACOBS, HALL, MOUNTAIN, SULLIVAN and CLIFFORD—6.

*For reversal*—Justice PASHMAN—1.