172 N.J. Super. 287 (1980)
411 A.2d 1156
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
FRANCIS PELTACK, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued January 16, 1980.
Decided February 8, 1980.
*289 Before Judges LORA, ANTELL and PRESSLER.
Philip A. Kahn argued the cause for appellant (Kahn & Weiner, attorneys).
Frederick S. Cohen, Deputy Attorney General, argued the cause for respondent (John J. Degnan, Attorney General of New Jersey, attorney).
The opinion of the court was delivered by ANTELL, J.A.D.
Defendant was convicted of conspiracy, N.J.S.A. 2A:98 1, together with Stanley Mleczko, and misconduct in office, N.J.S.A. 2A:85-1. Mleczko was also convicted under a third count in the indictment for misconduct in office. The charges arose from a series of transactions between certain vendors and the Borough of Manville in which defendants, who were Manville officials, were found to have demanded and received kickbacks amounting to 10% of the purchase prices. Also named in the indictment as coconspirators but not defendants were another official and the vendor companies' employees with whom the purchases were negotiated.
Defendant's principal argument on this appeal is that he was prejudiced during presentation of the State's case by the receipt of evidence of a crime other than that for which he was on trial. This involved a $700 kickback taken by defendant from the Burroughs Corporation in connection with the purchase of a Burroughs Accounting Machine. The scenario thereof followed the same general lines as the other transactions alleged in the indictment and included an understanding whereby the vendor inflated the purchase price on the voucher in an amount sufficient *290 to cover defendant's payment. The plot was launched in 1968 and the money paid in 1969. It is clear that prosecution therefor was barred by the statute of limitations when the indictment was returned on March 15, 1977.
The Burroughs transaction was described in the first six overt acts laid in the conspiracy indictment. The remaining 30 overt acts therein recited pertained to a corrupt agreement concerning (1) the purchase of a garbage truck in 1972 from Hall & Fuhs, (2) a high velocity sewer cleaner from Storr Tractor Equipment Supply Company in 1972 and (3) the purchase of materials and equipment from the W.E. Timmerman Company in 1973. Prior to trial defendant moved to sever the first six overt acts touching the Burroughs transaction of 1969 and preclude proof thereof. The motion rested on the contention that since this transaction involved no conspirators in common with the later ones it formed a separate criminal event therefrom which was completed prior to the bar of the statute of limitations. Defendant pointed out that the two Burroughs employees named as coconspirators in the first six overt acts played no part in any of the other transactions, and that although codefendant Mleczko was named as having committed one of the first six overt acts, the State would not prove that he did so with conspiratorial intent. Most significantly, the State's principal witness, Petrone, a convicted coconspirator who actively participated in all the later transactions, played no part whatever in the events involving the Burroughs Corporation. However, based on the prosecutor's representation that he would "tie it in" the trial judge denied defendant's motion.
At trial the prosecutor's representation failed and on defendant's motion the judge severed overt acts one through six upon his finding that the Burroughs transaction was separate and distinct from the conspiracy charge that occupied the balance of the indictment, a finding with which we are in accord. The prosecutor thereupon responded that proof of that transaction was nevertheless admissible under Evid.R. 55 "to show that the *291 defendant had a common mode of operation, ten percent way of doing business with vendors." The judges then ruled that this proof would be admitted "to show the existence of a plan on the part of defendant Peltack to obtain money from vendors."
After announcing his ruling the judge instructed the jury that although the charge relating to the Burroughs Corporation was no longer a subject of the trial, evidence thereof might nevertheless be considered by them as demonstrating "the existence of a plan to obtain payments from vendors dealing with the Borough of Manville", but not as
... indicating any disposition on the part of the defendants to commit the alleged acts of misconduct with reference to the subsequent transactions in 1971, '72 and '73 ... nor may any proofs relating to the Burroughs Corporation transaction be considered by you as supporting any inference that the misconduct as charged by the State relating to the transactions occurring in 1971, '72 and '73 were actually engaged in by the defendants.
The trial continued and, as the State notes in its brief on appeal, it "proffered overwhelming evidence of defendant's involvement in the 1968 Burroughs Corporation kickback scheme." In his summation the prosecutor stressed the evidence so received and argued that one of the Burroughs Corporation employees who testified would not have insisted upon the grant of immunity which he received as a condition to testifying unless the crime had actually happened. In his charge to the jury the judge restated his instructions as to the limited purpose of the Burroughs transaction evidence. To this he added that if the jury found it necessary to
... rely upon this evidence relating to the Burroughs Corporation, in order to find the defendants or either of them guilty of the offense charged or any one of those offenses, then this evidence or any inference therefrom, must be disregarded and may not enter your consideration.
The confusion created in the minds of the jurors from being told that the evidence was received for the purpose of *292 showing a "plan or scheme to extort payments from vendors" but that they could not "rely" on such evidence in evaluating defendants' guilt of the conspiracy to extort for which they were on trial was manifested by the following inquiry during deliberations:
How much of the evidence and testimony of the Burroughs transaction can be considered, and how can it be applied to determine the validity of the charges?
The question was answered by the trial judge in substantially the same language earlier stated.
Evid.R. 55 provides as follows:
Subject to Rule 47, evidence that a person committed a crime or civil wrong on a specified occasion, is inadmissible to prove his disposition to commit crime or civil wrong as the basis for an inference that he committed a crime or civil wrong on another specified occasion but, subject to Rule 48, such evidence is admissible to prove some other fact in issue including motive, intent, plan, knowledge, identity, or absence of mistake or accident.
The exclusionary intent of the rule was noted in State v. Garfole, 76 N.J. 445, 450 (1978). Its purpose is to protect defendants from the potentially great prejudice inherent in "other like crimes" evidence, since the average jury will much more readily accept the belief that one is guilty of the crime charged where it is demonstrated that he has committed a similar crime. State v. Sempsey, 141 N.J. Super. 317, 322 (App.Div. 1976), certif. den. 74 N.J. 272, 273 (1977); 2 Wigmore, Evidence (3 ed. 1940), § 304 at 204.
The law demurs at permitting a defendant to be convicted for a specific crime merely because his commission of crimes in the past shows him to be a bad person or having a propensity to commit crime.
........
... [O]ther-crimes evidence submitted by the prosecution has the distinct capacity of prejudicing the accused. Even instructions by the trial judge may not satisfactorily insulate the defendant from the hazard of the jury using such evidence improperly to find him guilty of the offense charged merely because *293 they believe he has committed a similar offense before. [State v. Garfole, supra, 76 N.J. at 450-51, 452; footnote omitted].
Hence, the admissibility of such evidence to demonstrate that defendant acted pursuant to a plan or scheme is specifically conditioned upon a finding that such is addressed to a "fact in issue." Although we are aware of no general rule whereby it may be determined in all cases whether evidence of other crimes is admissible to show a plan or scheme, we defer to the admonition that "evidence of other crimes should not be admitted at all unless it is necessary to prove an issue in the case." 1 Underhill's Criminal Evidence (6 ed. 1973), § 206 at 605.
... [I]t should be clear that R. 55 allows other crime evidence as proof of motive, intent, plan, knowledge, identity, or absence of mistake or accident only if one of those elements is actually in dispute. Some minimal relevance to an issue other than criminal or tortious disposition should not be viewed as "an open sesame to admissibility ...". 1963 Report, Comment on Rule 55, at 104. [Comment, N.J. Rules of Evidence, § 55-3 at 215 (Gann 1972)]
The rule generally obtaining is that the State may introduce evidence to prove every element of the offense even where defendant offers to stipulate with respect thereto. 75 Am.Jur.2d, Trial, § 133 at 228; 88 C.J.S. Trial § 58 at p. 161. Because of its capacity for prejudice, the same license is not given as to "other crimes" evidence. Proof thereof is allowed only to meet an issue relating to an element of the offense which is projected by defendant either before or during trial or is necessarily raised by the evidence. Also involved in the determination of admissibility is a weighing of the probative value of the prior offenses against their likely prejudicial effect. Evid.R. 4. In exercising his discretion the sensitivities of the trial judge should be principally attuned to what McCormick describes as the rule's underlying policy of "protecting the accused against unfair prejudice." McCormick, Evidence (2 ed. 1972), § 190 at 453.
*294 In State v. Atkins, 78 N.J. 454 (1979), defendant, charged with burglary, had been apprehended in the house of another. He explained that he had entered the building under the honest but mistaken impression that it was the home of a friend. The State was then permitted on rebuttal to prove earlier convictions for crimes of the same nature. In analyzing the correctness of the ruling the Supreme Court expressly stated that even though "evidence of prior crimes may have some bearing on motive, intent, plan, absence of mistake ..., Evid.R. 55, does not automatically warrant its admission." Id. at 462. Although affirming the conviction on the facts of that case, the opinion contained the following observation which we deem pertinent:
If the defense in the instant case had been alibi or a general denial, these prior convictions might properly have been excluded even though they were relevant to intent.... While intent would still be a necessary element of the prosecutor's case, the question of motive or intent would not have been raised by the evidence and thus the probative value of the prior offenses would likely be outweighed by their prejudicial effect. [Id. at 462.]
In State v. Sease, 138 N.J. Super. 80 (App.Div. 1975), defendant was convicted with others of armed robbery upon a number of patrons in a tavern. Although on the scene when the crime was committed, defendant denied participation therein, insisting that her presence was coincidental. On appeal she contended, among other things, that eyewitness testimony was erroneously admitted that during the course of the robbery she reached into the pocket of one of the patrons who had not been named as a victim in the indictment. This, she argued, was a violation of Evid.R. 55 since it constituted evidence of a crime other than that for which she was on trial. As one of the reasons for rejecting this contention we explained that the testimony was admissible as proof of a plan among defendant and her codefendants in order to meet her claim that she was there merely as an observer.
*295 State v. Wright, 66 N.J. 466 (1975), rev'g on dissent, 132 N.J. Super. 130 (App.Div. 1974), involved a conviction for manslaughter. The theory of the prosecution was that the seven month old infant victim died of gross and willful neglect by defendant-mother, and evidence was given over objection of the malnourished and dehydrated condition of the victim's surviving identical twin. By adopting the dissenting opinion in the Appellate Division the Supreme Court concluded that the questioned evidence was properly received with respect to the issue of whether the dead child's neglected condition was the product of a "willful mind", as the State charged, or as defendant asserted, an "honest mistake."
In State v. Wood, 130 N.J. Super. 401 (App.Div. 1973), aff'd o.b. 66 N.J. 8 (1974), it was held that the trial judge properly received evidence that some months before the homicide for which defendant was on trial an incident occurred in which he unlawfully possessed a handgun, since it went to a fact in issue, i.e., whether defendant owned or possessed a firearm similar to that used in the killing.
And in State v. Attanasio, 92 N.J. Super. 267 (App.Div. 1966), defendant appealed from his conviction for extortion and misconduct in office. He had been a mason foreman and the conviction was for taking money from one of the employees he supervised. One of the grounds for reversal urged on appeal was that the trial judge erred in receiving evidence that defendant had received a sum of money from the employee some time prior to the date charged in the indictment. We there held that the evidence was properly received to show the relationship of the parties, the subservience of one to the other, and defendant's scheme, motive and intent. It should be noted that the earlier extortion was practiced upon the same victim of the later crime, in material distinction to the facts hereof.
We find nothing in the evidence before us to bring the 1968-69 extortion practiced by defendant Peltack upon the Burroughs Corporation within the exception to the exclusionary *296 policy of Evid.R. 55. That event antedated those described in the later overt acts of the conspiracy indictment and those enumerated in the count for misconduct in office by between two and four years. It formed no part of, nor was it in any way instrumental to, the commission of the latter. Except for defendant Peltack, none of the culpable participants in the earlier affair played any part in the later. The defense consisted of a general denial and no issues were raised by the evidence which could be resolved by proving that defendant had conceived a plan to extort monies from vendors doing business with the Borough of Manville. We find in the State's position only the implied contention that since defendant extorted money from one vendor in 1968 69 he must have committed the same crime on other companies in the later years as well. For reasons stated, this view is inconsistent with prevailing legal principles. The State does not suggest that the error did not, beyond a reasonable doubt, contribute to the guilty verdict. See State v. Macon, 57 N.J. 325, 340 (1971).
Reversed and remanded for a new trial consistent with this opinion.