# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3105-21

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

ROBERT J. MACK, a/k/a
ROB MACK,

     Defendant-Appellant.

_____

Argued March 5, 2024 – Decided March 13, 2024

Before Judges Haas and Puglisi.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Indictment No. 18-10-1345.

Adam W. Toraya argued the cause for appellant (Bailey & Toraya, LLP, attorneys; Adam W. Toraya, on the briefs).

Ashlea De An Newman, Deputy Attorney General, argued the cause for respondent (Matthew J. Platkin, Attorney General, attorney; Ashlea De An Newman, on the brief).

PER CURIAM

A Monmouth County grand jury charged defendant Robert J. Mack in a three-count indictment with third-degree endangering the welfare of a child by the possession of child pornography (count one), second-degree endangering the welfare of a child by the distribution of child pornography (count two), and third-degree invasion of privacy (count three). Prior to trial, a motion judge rendered a comprehensive written decision denying defendant's request to sever the first two counts from the invasion of privacy charge in count three.

Following a four-day trial, the jury convicted defendant of all three counts of the indictment. The trial judge sentenced defendant to four years in prison on count one and to a concurrent seven-year term on count two. The judge also imposed a consecutive four-year term on count three. Thus, defendant's aggregate term was eleven years in prison. The judge also placed defendant on Parole Supervision for Life and required him to register as a sex offender.

On appeal, defendant raises the following contentions:

> POINT I
>
> DEFENDANT'S MOTION FOR SEVERANCE SHOULD HAVE BEEN GRANTED, AND AS A RESULT OF IMPROPER JOINDER OF OFFENSES HE WAS DENIED THE RIGHT TO A FAIR TRIAL.

2

POINT II

DEFENDANT'S CONSTITUTIONAL RIGHT TO A PUBLIC TRIAL WAS VIOLATED WHEN THE COURT REFUSED TO ALLOW DEFENDANT'S MOTHER TO BE PHYSICALLY PRESENT DURING JURY TRIAL.

POINT III

THE COURT ERRED IN FAILING TO GRANT DEFENDANT'S REQUEST FOR A CLAWANS CHARGE AFTER THE STATE FAILED TO CALL [DEFENDANT'S FATHER] AS A WITNESS.

POINT IV

THE SENTENCE IMPOSED WAS MANIFESTLY EXCESSIVE.

After reviewing the record in light of these contentions and the applicable law, we affirm.

I.

Briefly stated, the salient facts are as follows. Detective Tiffany Lenart worked in the Computer Crimes Unit of the Monmouth County Prosecutor's Office. In early December 2017, Lenart was investigating the distribution of digital files containing child pornography through the peer-to-peer file sharing network known as "BitTorrent." A peer-to-peer file sharing network allows an individual with a computer to send files to and receive files from other

individuals' computers. Lenart was using a "law enforcement version" of BitTorrent, which allowed her to "monitor[] the web traffic on those networks for specific files identified either by the National Center for Missing and Exploited Children or by other investigators as potentially containing materials of child exploitation."

During her investigation, Lenart downloaded "a folder containing images and videos of potential child sexual abuse materials" from a computer with a specific IP address[1] in Monmouth County. Lenart was able to trace the IP address to the home where defendant lived in his parents' basement.[2]

Lenart obtained a search warrant and executed it at defendant's home on January 24, 2018. Lenart seized forty-three electronic devices, including computers and loose hard drives, from the home. While at the home, Lenart conducted "preview examinations" of some of the devices. In a Seagate 120 gigabyte hard drive and in a Seagate 300 gigabyte hard drive found in a cabinet in defendant's bedroom, Lenart discovered numerous photographs and videos of

---

[1] An "IP address" is an identifying number assigned to an internet subscriber by the subscriber's service provider. State v. Reid, 194 N.J. 386, 389 (2008).

[2] Lenart made a binder containing the materials and also placed them on a computer disc. Both items were entered in evidence at the trial.

A-3105-21

children engaging in sexual activity. Upon finding the child pornography, Lenart arrested defendant.

Lenart also recovered a Lenovo laptop computer that was next to defendant's bed. Lenart subsequently obtained the password for the device from defendant's attorney. Upon examining it, Lenart found that Robert Mack was the registered owner of the computer and that the user profile and the email address associated with the computer referenced defendant's name.

Lenart found a "qBitTorrent" icon "in the system tray which is the tray at the bottom of the computer that shows you programs that are running or are available and the date and time." Lenart testified that this program "is a peer-to-peer file sharing program that implements the torrent protocol." In other words, this program on defendant's computer was the program that enabled Lenart to download the child pornography photographs and videos from the computer in December 2017.

Lenart found that defendant's laptop also had a "CCleaner program," which enabled him to scrub the internet history of his computer and "delete some artifacts that are on the computer." However, Lenart was able to recover evidence from the computer indicating it had been used to search for child pornography.

5

During the search of defendant's bedroom, Lenart also found "two small wireless cameras" that "could be used as recording devices." While examining defendant's computer, Lenart discovered a folder containing "nude photos and videos" of a twenty-year-old woman who was living with defendant's parents at the time of the search. These images were taken of the woman while she was in the bathroom and bedroom of the home.

The woman testified at trial that she did not know about the cameras and would never have allowed defendant to photograph and film her in that manner. The woman also testified that after defendant returned home after his arrest, he told her "that there might be photos and videos that are found of [her], and not to be concerned that he's always recording things."

Defendant did not testify at the trial and called no witnesses on his behalf.

## II.

In Point I, defendant contends that the motion judge erred in denying his motion to sever the child pornography counts from the invasion of privacy count involving the twenty-year-old woman. He argues that the child pornography charges were in no way related to his actions in secretly filming the woman in her bedroom and bathroom. We disagree.

6

Generally, in deciding a motion for severance, the trial court enjoys "a wide range of discretion[.]" State v. Coruzzi, 189 N.J. Super. 273, 297 (App. Div. 1983). A denial of a motion for severance should not be reversed "absent a mistaken exercise of that discretion." Ibid.

"[W]here the evidence establishes that multiple offenses are linked as part of the same transaction or series of transactions, a court should grant a motion for severance only when [a] defendant has satisfied the court that prejudice would result." State v. Moore, 113 N.J. 239, 273 (1988). The courts have recognized that any trial involving several charges "probably will involve some potential of [prejudice], since the multiplicity alone may suggest to the jury a propensity to criminal conduct." Coruzzi, 189 N.J. Super. at 297. However, "other considerations, such as economy and judicial expediency, must be weighed" when deciding a severance motion. Ibid. These interests may require that charges remain joined, "so long as the defendant's right to a fair trial remains unprejudiced." Id. at 298.

The proper inquiry when deciding a motion for severance is whether, if the crimes were tried separately, evidence of the severed offenses would be admissible at the trial of the remaining charges. State v. Chenique-Puey, 145 N.J. 334, 341 (1996). If the evidence would be admissible at both trials, the trial

court should not sever the charges, because the defendant "will not suffer any more prejudice in a joint trial than he would in separate trials." Coruzzi, 189 N.J. Super. at 299. To evaluate whether evidence of each crime would be admissible at the trial of the others, and thus whether severance should be denied, the trial court must utilize the same standard used to determine whether other-crime evidence is admissible under N.J.R.E. 404(b). Chenique-Puey, 145 N.J. at 341.

The Supreme Court's opinion in State v. Cofield, 127 N.J. 328, 338 (1992), sets forth the well-established test for deciding whether evidence is admissible under this rule:

> 1. The evidence of the other crime must be admissible as relevant to a material issue;
>
> 2. It must be similar in kind and reasonably close in time to the offense charged;
>
> 3. The evidence of the other crime must be clear and convincing; and
>
> 4. The probative value of the evidence must not be outweighed by its apparent prejudice.
>
> [(quoting Abraham P. Ordover, Balancing the Presumptions of Guilt and Innocence: Rules 404(b), 608(b), and 609(a), 38 Emory L.J. 135, 160 (1989)).]

The party seeking to admit other-crime evidence bears the burden to establish each of the four prongs. See State v. J.M., 225 N.J. 146, 158-59 (2016). A court's determination on the admissibility of other-crime evidence is "entitled to deference" and is "reviewed under an abuse of discretion standard." State v. Ramseur, 106 N.J. 123, 266 (1987). "Only where there is a 'clear error of judgment' should the 'trial court's conclusion with respect to [the] balancing test' be disturbed." State v. Marrero, 148 N.J. 469, 483 (1997) (quoting State v. DiFrisco, 137 N.J. 434, 496-97 (1994)).

When weighing the probative value of N.J.R.E. 404(b) evidence against its prejudicial nature under the fourth prong of Cofield, a court must focus on "the specific context in which the evidence is offered[.]" State v. Stevens, 115 N.J. 289, 303 (1989). The court should also consider whether the fact the other-crime evidence is offered to prove "cannot be proved by less prejudicial evidence." State v. Hardaway, 269 N.J. Super. 627, 630-31 (App. Div. 1994). Further, judicial economy in some circumstances may justify denying a severance motion where many of the same witnesses would need to testify in each trial if the counts were separated. Moore, 113 N.J. at 276.

Here, the motion judge addressed each of the Cofield factors in his written decision. As to Prong One, the judge found that the child pornography charges

were relevant to the material issues regarding the invasion of privacy count because they showed defendant's intent and state of mind. The photographs and videos of children that Lenart was able to download came from the laptop computer Lenart found in defendant's bedroom. That laptop contained the peer-to-peer file sharing program that sent Lenart these materials. During her examination of the laptop in connection with the child pornography, Lenart found the folder containing the nude photographs and videos defendant took of the invasion of privacy victim. Thus, the investigations of the two offenses were inextricably intertwined and the laptop was plainly admissible in evidence concerning all of the charges involved in this case.

Defendant argues that the laptop should not have been admissible regarding the child pornography charges because no pornographic photographs or videos of children were found on the device. However, this argument ignores the fact that the laptop contained the peer-to-peer file sharing program used to share the materials with Lenart's computer, a scrubbing program, and evidence of prior searches for contraband. These materials were clearly relevant to the child pornography charges.

The laptop was also essential to explain the origins of all three charges against defendant. It provided the jury with the background information

10

necessary to understand how and why Lenart seized the laptop. It also contained the images and videos that defendant secretly took of the young woman who was staying in the house, which were central to the invasion of privacy charge. The combination of all of the materials found on the computer thus explains defendant's common intent and motive when committing all three offenses.

Under Prong Two of Cofield, the motion judge correctly found that "[t]he child pornography offenses [were] similar in kind and reasonably close in time to the invasion of privacy offenses in that evidence of both was found on the same device in . . . defendant's possession[.]" Contrary to defendant's repeated argument, "[c]harges need not be identical to qualify as 'similar' for purposes of joinder." State v. Sterling, 215 N.J. 65, 91 (2013). The inquiry is "whether there is similarity or a connection between charges because one involves evidence probative of another charge." Id. at 92. Because the evidence for the child pornography charges was found on the same laptop as the evidence of invasion of privacy, that evidence is connected as probative of the other offense. Id. at 91-92.

Turning to Prong Three, the evidence of child pornography possession, the distribution of these materials, and invasion of privacy was both clear and convincing.

Finally, the judge properly found under Prong Four that the probative value of the evidence did not outweigh its apparent prejudice.  The inquiry is "whether less inflammatory sources of evidence that are equally probative are available."  State v. Rose, 206 N.J. 141, 164 (2011).  The evidence here is "prejudicial in the way that all highly probative evidence is prejudicial:  because it tends to prove a material issue in dispute."  Ibid.  However, it is not so unfairly prejudicial to overcome the substantial probative value of the evidence contained on the laptop and hard drives.  Ibid.  Defendant would suffer no more prejudice in a joint trial than he would in separate trials, as the evidence at issue here would have been admissible in both.  Chenique-Puey, 145 N.J. at 341.

Even if, for the sake of argument, we were able to agree with defendant that the child pornography offenses should have been severed from the invasion of privacy charge, we are not convinced that a new trial would be mandated.  See, e.g., Sterling, 215 N.J. at 72 (in which the Court recognized that improper joinder of certain offenses had occurred at trial but nevertheless upheld a defendant's multiple convictions because the error was harmless in light of the strength of the State's proofs of guilt).  Here, the State presented detailed and compelling evidence of defendant's guilt of all of the charged crimes, including the testimony of Lenart and the invasion of privacy victim, the photographs and

12

videos seized from defendant's hard drives, the materials taken from defendant's laptop, and the contraband Lenart downloaded from defendant's computer at the start of her investigation. Defendant's claim of error associated with the joinder of these offenses, even if they were analytically correct, were harmless in the context presented.

III.

Defendant's remaining arguments lack sufficient merit to warrant extended discussion. See R. 2:11-3(e)(2). We add the following comments.

In Point II, defendant argues that his right to a public trial was violated because his mother was not permitted to be in the courtroom with him during the trial. However, defendant's trial took place in December 2021, just after all State court locations were reopened to the public following the closures made necessary by the Covid-19 pandemic.[3] Because of space limitations in the courtroom due to social distancing requirements, there was no room for spectators to remain in the courtroom. However, anyone who wished to observe the proceedings could do so by watching a webcam. Due to the unprecedented

---

[3] See Notice to the Bar and Public: Court Access – All State Court Locations To Reopen To The Public As Of Monday, August 2, 2021 (Jul. 16, 2021) (https://www.njcourts.gov/sites/default/files/notices/2021/07/n210716b.pdf).

health emergency faced by our courts during this period, we are satisfied that this arrangement ensured defendant received a fair public trial.

In Point III, defendant argues that the trial judge erred by not granting his request for an adverse inference charge against the State for not calling his father as a witness at trial. This contention also lacks merit.

"Generally, failure of a party to produce before a trial tribunal proof which, it appears, would serve to elucidate the facts in issue, raises a natural inference that the party so failing fears exposure of those facts would be unfavorable to him." State v. Clawans 38 N.J. 162, 170 (1962). However, in order for an adverse inference to be applied, the court must find, among other things,

> that the uncalled witness is peculiarly within the control or power of only the one party, or that there is a special relationship between the party and the witness or the party has superior knowledge of the identity of the witness or of the testimony the witness might be expected to give . . . .
>
> [State v. Hill, 199 N.J. 545, 561 (2009) (quoting State v. Hickman, 204 N.J. Super. 409, 414 (App. Div. 1985)).]

Here, defendant's father was not "peculiarly within the control or power of only the [State]." Ibid. Defendant, whose attorney sought during the trial to portray defendant's father as the possible guilty party, could have called his

father as a witness. Moreover, defendant never established that his father, who refused to provide any statements to the State during its investigation, would "elucidate relevant and critical facts in issue" or that his testimony would be "superior to that already utilized" by the State to prove its case. Ibid. Thus, defendant was not entitled to the adverse inference charge he sought. Ibid.

Finally, defendant argues in Point Four that the trial judge abused her discretion in imposing an eleven-year aggregate sentence. We disagree.

Trial judges have broad sentencing discretion as long as the sentence is based on competent credible evidence and fits within the statutory framework. State v. Dalziel, 182 N.J. 494, 500 (2005). Judges must identify and consider "any relevant aggravating and mitigating factors" that "'are called to the court's attention[,]'" and "explain how they arrived at a particular sentence." State v. Case, 220 N.J. 49, 64-65 (2014) (quoting State v. Blackmon, 202 N.J. 283, 297 (2010)). "Appellate review of sentencing is deferential," and we therefore avoid substituting our judgment for the judgment of the trial court. Id. at 65; State v. O'Donnell, 117 N.J. 210, 215 (1989); State v. Roth, 95 N.J. 334, 365 (1984).

We are satisfied the judge made findings of fact concerning aggravating and mitigating factors that were based on competent and reasonably credible evidence in the record and applied the correct sentencing guidelines enunciated

15

in the Code, including the imposition of consecutive sentences. Accordingly, there is no reason for us to second-guess the sentence the judge imposed.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3105-21