**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3335-23

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

RALPH G. BOUZY,

    Defendant-Appellant.

_____

Argued April 29, 2026 – Decided June 24, 2026

Before Judges Mayer, Gummer, and Jacobs.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Indictment No. 22-07-0590.

Michael J. Kenney, Assistant Deputy Public Defender, argued the cause for appellant (Jennifer N. Sellitti, Public Defender, attorney; Michael J. Kenney, of counsel and on the briefs).

Meredith L. Balo, Assistant Prosecutor, argued the cause for respondent (William A. Daniel, Union County Prosecutor, attorney; Michele C. Buckley, Assistant Prosecutor, of counsel and on the brief).

Appellant filed a self-represented supplemental brief.

PER CURIAM

Defendant Ralph G. Bouzy appeals his convictions and sentence for weapons offenses, terroristic threats, and aggravated assault. We affirm defendant's convictions but remand to amend the judgment of conviction (JOC) for the sentence imposed on merged counts.

I.

On the afternoon of January 24, 2022, Jefferson Servil was in his attic apartment in Linden, where he lived with his then-girlfriend, Jemma George. At approximately 5:00 p.m., he heard a knock at the door. When he opened it, he was confronted by defendant, who pointed a gun at his face and grabbed his neck. Defendant said, "I heard you was looking for me." Servil replied, "My jacket." Defendant held the gun to Servil's face, placing his other hand on Servil's neck. Servil tried to grab the gun, leading to a struggle. Servil yelled to George to call the police.

During the altercation, defendant pressed a button on the gun, releasing the gun's ammunition magazine. Servil bent down, picked up the magazine, and threw it to George, who, at this point, was half-way down the steps leading from the apartment. George put the magazine in her pocket. Defendant broke free and fled. When the police arrived on scene, they found Servil and George.

2

George gave police the loaded magazine. Officer Nicholas Scanlon secured the magazine in an evidence bag. Police then transported Servil and George to headquarters where they provided statements.

In his statement, Servil said he knew defendant from elementary school and they were close at one time. He explained they were no longer close because approximately three to four years before the incident, he had loaned defendant a jacket that defendant refused to return. On another occasion afterward, Servil purchased from defendant a pair of sneakers for $500, later learning they were counterfeit. These incidents angered Servil, and he told defendant that when he saw him, "It'll be a problem"; in other words, they would fight.

Another witness to the incident, Holroyd Ffife, lived in the downstairs apartment. In his statement, Ffife stated he had heard loud banging outside his door. As he approached the door, he heard someone yell, "You come to fight me." At first, Ffife did not open the door, but he banged on the door and yelled, "Get away from the door." He then opened the door slightly and saw his upstairs neighbor, Servil, holding another man in a headlock. He heard Servil shouting for his girlfriend to call the police. Believing he saw a gun, Ffife went back inside his apartment.

A-3335-23

On January 24, 2022, a Union County grand jury returned an indictment charging defendant with: second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b)(1) (count one); second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a)(1) (count two); third-degree terroristic threats, N.J.S.A. 2C:12-3(a), (b) (count three); and fourth-degree aggravated assault, N.J.S.A. 2C:12-1(b)(4) (count 4).

At trial, Servil testified defendant had pointed a gun at him, choked him, and fled after a struggle. On cross-examination, defense counsel attempted to question Servil about threats he had made against defendant. Servil responded by stating defendant had told him that he would retaliate against him "after he got out of jail." The court sustained defendant's objection to this testimony but denied defendant's motion for a mistrial, finding that remedy was not warranted. Instead, the court instructed the jury to disregard Servil's "last statement," encompassing the reference to defendant's incarceration.

Defendant also maintained testimony that Servil's allegations about defendant having stolen his jacket and selling counterfeit shoes constituted "other-crimes" evidence and moved to disallow their mention. The court allowed the testimony but gave a limiting instruction that those allegations not be considered as a propensity by defendant to break the law:

> The State has introduced evidence that the defendant had allegedly taken a jacket from . . . Servil and not returned it, and had allegedly sold Jefferson Servil counterfeit sneakers.
>
> . . . .
>
> Before you can give any weight to this evidence, you must be satisfied that the defendant committed the other crime. If you are not so satisfied, you may not consider it for any purpose.
>
> However, you may not use this evidence to decide that the defendant has a tendency to commit crimes or that he is a bad person. That is, you may not decide that just because the defendant has committed other crimes, wrongs or acts, he must be guilty of the present crimes. I have admitted the evidence only to help you decide the specific question of context of the events and/or defendant's motive. You may not consider it for any other purpose and may not find the defendant guilty not simply because the State has offered evidence that he committed other crimes, wrongs or acts.

The defense theory was that neither George nor Ffife could identify defendant as the assailant and there was no video or forensic evidence corroborating Servil's account. Additionally, the defense suggested the gun could have belonged to Servil, who had motive to blame defendant based on their prior interactions. Toward this end, counsel elicited from Officer Scanlon that he had not checked Servil for weapons at the scene. Counsel also elicited testimony from Officer Scanlon that defendant's sister alleged Servil had

5

threatened defendant and had said he wanted to "make [defendant]'s life miserable."

The jury found defendant guilty on all counts. In May 2024, the court imposed a sentence of six years' imprisonment with forty-two months' parole ineligibility for count one. Sentences for the remaining counts were ordered to run concurrently: six years with forty-two months parole ineligibility on count two, three years on count three, and eighteen months with no parole eligibility pursuant to the Graves Act, N.J.S.A. 2C:43-6(c), on count four.

Defendant appeals, raising the following arguments in a counseled brief:

POINT I

THE TRIAL COURT ERRED BY PROHIBITING DEFENSE COUNSEL FROM CROSS EXAMINING THE ALLEGED VICTIM ON THE KEY ISSUE OF BIAS, DENYING [DEFENDANT] A FAIR TRIAL.

POINT II

THE TRIAL COURT ERRED BY ALLOWING THE JURY TO HEAR UNNECESSARY AND IRRELEVANT EVIDENCE OF OTHER BAD ACTS AND FAILING TO PROPERLY INSTRUCT THE JURY.

POINT III

THE TRIAL COURT ERRED BY DENYING THE DEFENSE'S MOTION FOR A MISTRIAL AFTER THE JURY HEARD [DEFENDANT] WAS

PREVIOUSLY INCARCERATED. ADDITIONALLY, THE COURT'S CURATIVE INSTRUCTION WAS INADEQUATE TO REMEDY SERVIL'S HIGHLY PREJUDICIAL STATEMENTS.

POINT IV

THE COURT IMPROPERLY ADMITTED EXPERT TESTIMONY OF OFFICER SCANLON AS LAY OPINION TESTIMONY.

POINT V

THE CUMULATIVE EFFECT OF THE ERRORS DENIED [DEFENDANT] A FAIR TRIAL.

POINT VI

[DEFENDANT]'S SENTENCE IS EXCESSIVE AND A REMAND FOR RESENTENCING IS NECESSARY. ALTERNATIVELY, AT A MINIMUM, THE SENTENCES AND MONETARY PENALTIES IMPOSED ON THE MERGED COUNTS MUST BE VACATED.

Defendant filed a self-represented brief, raising the following arguments:

POINT I

THE TRIAL COURT COMMITTED ERROR ALLOWING THE STATE TO INTRODUCE PRIOR BAD ACT ALLEGATIONS THAT [DEFENDANT] SOLD THE ALLEGED VICTIM FAKE SHOES, VIOLATING THE CONFRONTATION CLAUSE.

POINT II

THE TRIAL COURT ERRONEOUSLY RULED EVIDENCE OF THE ALLEGED VICTIM'S MENTAL HEALTH HISTORY INADMISSIBLE.

POINT III

THE TRIAL COURT ERRONEOUSLY EXCLUDED IMPEACHMENT EVIDENCE OFFERED UNDER RULE 607, TO CONTRADICT THE ALLEGED VICTIM'S STATEMENT THAT HE WAS EVICTED DUE TO THE ALLEGED INCIDENT.

POINT IV

THE TRIAL COURT ERRONEOUSLY RULED HEARSAY EVIDENCE ADMISSIBLE.

POINT V

THE TRIAL COURT FAILED TO TELL THE JURY THAT [THE] VERDICT DOES NOT HAVE TO BE UNANIMOUS.

II.

Cross-Examination

We review evidentiary decisions for abuse of discretion. State v. Prall, 231 N.J. 567, 580 (2018). An evidentiary ruling will be overturned only when "a decision is made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis." Masone v. Levine, 382 N.J. Super. 181, 193 (App. Div. 2005) (internal quotation marks omitted)

(quoting Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002)).

At trial, a party may introduce evidence of bias. State v. Gorrell, 297 N.J. Super. 142, 149 (App. Div. 1996). Parties may demonstrate bias through extrinsic evidence. N.J.R.E. 607.

N.J.R.E. 611(b) restricts cross-examination to "the subject matter of the direct examination and matters affecting the witness'[s] credibility." The right to cross-examine a witness "is not absolute, and may, in appropriate circumstances, bow to competing interests." State v. Budis, 125 N.J. 519, 531 (1991) (citing Chambers v. Mississippi, 410 U.S. 284, 295 (1973)). "The scope of cross-examination . . . rests within the sound discretion of the trial court." State v. Harvey, 151 N.J. 117, 188 (1997) (citing State v. Martini, 131 N.J. 176, 263 (1993)). "[C]ourts 'retain wide latitude . . . to impose reasonable limits on . . . cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness'[s] safety, or interrogation that is repetitive or only marginally relevant.'" Budis, 125 N.J. at 532 (omissions in original) (quoting Del. v. Vans Arsdall, 475 U.S. 673, 679 (1986)). "[A] decision to limit cross-examination will not be disturbed on appeal 'unless clear error and prejudice are shown.'" Casino Reinvestment Dev. Auth. v. Lustgarten, 332 N.J. Super. 472, 492 (App. Div. 2000) (quoting

Glenpointe Assocs. v. Twp. of Teaneck, 241 N.J. Super. 37, 54 (App. Div. 1990)).

Based on our review of the record, we are satisfied the trial court ruled within its discretion to limit defense counsel's cross-examination of Servil as reflected in the following colloquy:

> [DEFENSE COUNSEL]: Mr. Servil, you had made threats to [defendant] prior to this incident, correct?
>
> [PROSECUTION]: Objection, your Honor.
>
> [SERVIL]: What about the threat he made to me after he got out of jail?
>
> THE COURT: Hold on. Mr. Servil, wait.
>
> [DEFENSE COUNSEL]: We need an instruction, Judge.
>
> THE COURT: I didn't hear what he said.
>
> [DEFENSE COUNSEL]: Sidebar, please.
>
> . . . .
>
> [Sidebar conference]
>
> THE COURT: What did he say?
>
> [DEFENSE COUNSEL]: Twice, "What about the way he treated me after he got out of jail?"
>
> THE COURT: Okay.

[DEFENSE COUNSEL]:  I'd ask for a mistrial.

THE COURT:  No, I can give a curative instruction to that because what happened after he got out of jail is irrelevant in this court; we're here for before.

[DEFENSE COUNSEL]:  Well, the issue is that it's the -- what comes up in jurors' minds knowing that someone has been incarcerated.  That's what the problem is.

THE COURT:  Well, there was no mention of incarceration.

[DEFENSE COUNSEL]:  "When he got out of jail" advises he was incarcerated prior to getting out of jail.

THE COURT:  I am going to give a curative instruction that's not something that's grounds for a mistrial. Anything else?

[PROSECUTION]:  Yes, your Honor.  I objected to the question regarding victim threatening defendant.  I would say that's prior bad acts that are not convictions can't be used for propensity --

THE COURT:  It also sounds like we're talking about things that happened post incident.

[DEFENSE COUNSEL]:  No, no, my question was before and then he said what about after he was released from jail; that was his response.

THE COURT:  Did he say he was released from jail?

[DEFENSE COUNSEL]:  When [defendant] was.

THE COURT:  What's the basis of the objection?

11

[PROSECUTION]: Essentially inadmissible reversible for being prior bad acts when there's no self-defense claim here. The fact that he threatened him cannot be used to somehow essentially --

THE COURT: Well, we already know there were threats going back and forth.

[PROSECUTION]: Yeah, those are outside the scope of direct. They haven't come out at all.

[DEFENSE COUNSEL]: Well, okay. I mean, do you want me to call him as a witness and I'll ask him on direct?

THE COURT: Call who as a witness?

[DEFENSE COUNSEL]: Mr. Servil.

THE COURT: This isn't going to come in and we're going to give a curative instruction to the jury and I'm going to instruct them to disregard everything he said regarding Mr. Servil's last statement. The objection is going to be sustained and we're going to move on.

From this colloquy, we discern the court determined the alleged threats Servil had made prior to the incident were beyond the scope of direct examination of defendant and, thus, the court imposed a reasonable limit on evidence of marginal relevance. Budis, 125 N.J. at 532. Additionally, the court accurately recalled the jury had already heard testimony from Servil about threats he had made toward defendant:

[DEFENSE COUNSEL:] . . . And . . . I think you said you were not looking for [defendant] after you saw him in the jacket at your place of employment, correct?

[SERVIL:] No, I told him to come over to bring me my jacket, he said no.

[DEFENSE COUNSEL:] And then what did you say?

[SERVIL:] I told him if you want to fight about it, we can fight about it.

[DEFENSE COUNSEL:] And you told other people that you wanted to fight about it, right?

[SERVIL:] Yes, I did.

[DEFENSE COUNSEL:] You were telling people all around town that --

[SERVIL:] No, I wasn't telling people around town, I was telling my friends. John; that's about it.

[DEFENSE COUNSEL:] That you wanted to fight [defendant]?

[SERVIL:] Yeah, because that was my jacket, that was my property. I also told him I wanted to fight him.

[DEFENSE COUNSEL:] You told [defendant]?

[SERVIL:] Yes.

[DEFENSE COUNSEL:] That you wanted to fight [defendant]?

[SERVIL:] Yes.

Officer Scanlon also testified about Servil's threats against defendant:

> [DEFENSE COUNSEL:] And so you received information that [Servil] had said that he wanted to make [defendant]'s life miserable?
>
> [OFFICER SCANLON:] Correct.
>
> . . . .
>
> [DEFENSE COUNSEL:] You did not speak with [Servil] about these allegations of him making threats towards [defendant], correct?
>
> [OFFICER SCANLON:] Correct, I did not.
>
> [DEFENSE COUNSEL:] You did not address [Servil] about him allegedly saying he wanted to make [defendant]'s life miserable?
>
> [OFFICER SCANLON:] Correct, I did not.

On consideration of the record, we conclude the trial court's decision to limit Servil's cross-examination did not demonstrate "clear error and prejudice." Lustgarten, 332 N.J. Super. at 492. Moreover, under the circumstances, any perceived error was harmless. See R. 2:10-2 ("[a]ny error or omission shall be disregarded by the appellate court unless it is of such a nature as to have been clearly capable of producing an unjust result"). Additional presentation of bias evidence would have been cumulative. See N.J.R.E. 403 ("[t]he court may

14

exclude relevant evidence if its probative value is substantially outweighed by . . . needlessly presenting cumulative evidence.").

Relatedly, there was no need for the court to grant a mistrial. We review a trial court's denial of a motion for mistrial for abuse of discretion. State v. Herbert, 457 N.J. Super. 490, 503 (App. Div. 2019). "The grant of a mistrial is an extraordinary remedy to be exercised only when necessary 'to prevent an obvious failure of justice.'" State v. Yough, 208 N.J. 385, 397 (2011) (quoting Harvey, 151 N.J. at 205). "For that reason, an appellate court should not reverse a trial court's denial of a mistrial motion absent a 'clear showing' that 'the defendant suffered actual harm' or that the court otherwise 'abused its discretion.'" Ibid. (quoting State v. LaBrutto, 114 N.J. 187, 207 (1989)).

> Mr. Servil said some things that are not part of this case and should not be part of your consideration in terms of rendering a verdict in evaluating the evidence in this case, and I'm telling you to disregard the last things that Mr. Servil said, as they are not relevant to these proceedings.

Defendant argues this instruction was insufficient. We disagree. Here, the trial court, in its discretion, instructed the jurors to disregard "the last things Mr. Servil said" without repeating the testimony verbatim. This course, although oblique, reflects a conscious choice by the court to avoid reiterating— and thereby reinforcing—the prejudicial testimony of the witness. In this

15

manner the court reasonably achieved the end of instructing the jury to disregard potentially prejudicial testimony.

Further, we note that in context, Servil was referring to defendant's arrest in this case, not an unrelated arrest. It would come as no surprise to jurors that defendant was arrested and in jail for the charges concerned, as the context here suggested. Of heightened concern would have been mention of defendant's incarceration for other offenses. The trial court correctly found mention of defendant's incarceration was not grounds for mistrial. Stated otherwise, there was no "'clear showing' that ' . . . defendant suffered actual harm' or that the court otherwise 'abused its discretion,'" such that a mistrial was necessary. Yough, 208 N.J. at 397. See Jackowitz v. Lang, 408 N.J. Super. 495, 505 (App. Div. 2009) ("Fleeting comments, even if improper, may not warrant a new trial, particularly when the verdict is fair.").

Prior Bad Acts

N.J.R.E. 404(b) provides:

> (b) Other Crimes, Wrongs or Acts.
>
>> (1) Prohibited Uses. Except as otherwise provided by Rule 608(b), evidence of other crimes, wrongs, or acts is not admissible to prove a person's disposition in order to show that on a particular occasion the

16

person acted in conformity with such disposition.

(2) Permitted Uses. This evidence may be admitted for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident when such matters are relevant to a material issue in dispute.

"[T]o avoid the over-use of extrinsic evidence of other crimes or wrongs:"

1. The evidence of the other crime must be admissible as relevant to a material issue;

2. It must be similar in kind and reasonably close in time to the offense charged;

3. The evidence of the other crime must be clear and convincing; and

4. The probative value of the evidence must not be outweighed by its apparent prejudice.

[State v. Cofield, 127 N.J. 328, 338 (1992) (quoting Abraham P. Ordover, Balancing The Presumptions Of Guilt And Innocence: Rules 404(b), 608(b), And 609(a), 38 Emory L.J. 135, 160 (1989) (footnote omitted)).]

"In addition to being relevant to an issue genuinely in dispute, the other-crime evidence must 'be necessary for [the disputed issue's] proof.'" State v. Marrero, 148 N.J. 469, 482 (1997) (alteration in original) (quoting State v. Stevens, 115 N.J. 289, 301 (1989)). "Because of its damaging nature, in

17

determining the probative worth of other-crime evidence, 'a court should consider . . . whether its proffered use in the case can adequately be served by other evidence.'" Ibid. (alteration and omission in original) (quoting Stevens, 115 N.J. at 303). "Once it is determined that the other-crime evidence is material to a fact genuinely in issue and that the other-crime evidence is necessary, 'the probative value of the proffered evidence [must] be carefully balanced against the danger that it will create undue prejudice against the defendant.'" Ibid. (alteration in original) (quoting Stevens, 115 N.J. at 302).

We reject defendant's contentions the trial court erred in permitting Servil to testify that defendant previously sold him counterfeit sneakers and failed to return a previously-loaned jacket. That testimony was admissible under N.J.R.E. 404(b) to provide context why defendant and Servil were not on good terms. Those incidents were material to defendant's motive and were "necessary for [the disputed issue's] proof." Marrero, 148 N.J. at 482. Admission of Servil's testimony, even if error, was not prejudicial as the court gave the jury the following limiting instruction:

> The State has introduced evidence that the defendant had allegedly taken a jacket from . . . Servil and not returned it, and had allegedly sold Jefferson Servil counterfeit sneakers.
>
> . . . .

A-3335-23

Before you can give any weight to this evidence, you must be satisfied that the defendant committed the other crime. If you are not so satisfied, you may not consider it for any purpose.

However, you may not use this evidence to decide that the defendant has a tendency to commit crimes or that he is a bad person. That is, you may not decide that just because the defendant has committed other crimes, wrongs or acts, he must be guilty of the present crimes. I have admitted the evidence only to help you decide the specific question of context of the events and/or defendant's motive. You may not consider it for any other purpose and may not find the defendant guilty not simply because the State has offered evidence that he committed other crimes, wrongs or acts.

Lay Testimony

N.J.R.E. 701 permits a lay witness's "testimony in the form of opinions or inferences . . . if it is (a) rationally based on the perception of the witness and (b) will assist in understanding the witness testimony or in determining a fact in issue." "[T]he first prong . . . requires that a witness's 'testimony . . . be based on the witness's perception, which rests on the acquisition of knowledge through the use of one's sense of touch, taste, sight, smell or hearing.'" State v. Watson, 254 N.J. 558, 592 (2023) (second omission in original) (quoting State v. Higgs, 253 N.J. 333, 363 (2023)) (internal quotation marks omitted). "The second prong . . . limits lay opinion testimony 'to testimony that will assist the trier of

19

fact either by helping to explain the witness's testimony or by shedding light on the determination of a disputed factual issue.'" Ibid. (quoting Higgs, 253 N.J. at 363).

Lay-opinion testimony "can only be admitted if it falls within the narrow bounds of testimony that is based on the perception of the witness and that will assist the jury in performing its function." State v. McLean, 205 N.J. 438, 456 (2011). "It is well-established that a lay witness may give his opinion in matters of common knowledge and observation." LaBrutto, 114 N.J. at 197.

Before his testimony, the State indicated Officer Scanlon would testify about his actions at the scene. He would explain that on his arrival, George handed him a loaded magazine, which Officer Scanlon then secured. Officer Scanlon would further describe the magazine, noting it contained ten rounds of ammunition and explaining how such a magazine is inserted into a handgun. Defense counsel objected to this testimony on the grounds Scanlon was not qualified as a firearms expert and this testimony was outside the ken of the average juror.

In allowing Officer Scanlon's proffered testimony, the court stated:

> Right, but you're . . . saying it would be outside the ken of the average juror. But we're talking about something simplistic. We're not talking about something that is difficult to understand. . . . [W]e're not talking about

something that it's necessary for an expert to explain. We are talking about a . . . magazine for a gun. And I believe that it is well within. That expert testimony is not something that is necessary in order to explain that to a jury. As I said, the main focus really, I believe, is the carrying mechanism for the bullets. The bullets were in the magazine. That's the key. The key is that there were bullets in it. And that just happens to be the . . . storage device for the . . . for the bullets.

On review of the record, we agree the officer's testimony was within the ken of the average juror and not unduly prejudicial. This was underscored by defense counsel's effective cross-examination of Officer Scanlon. In particular, counsel obtained an admission that, as is widely known, there are many types of semi-automatic handguns, and contrary to Servil's claim that he released the magazine by pressing a button, not all magazines use a button release mechanism. Additionally, counsel emphasized the police had recovered only the alleged magazine, not the firearm itself. In short, we perceive Officer Scanlon's testimony as having satisfied the two prongs of N.J.R.E. 701 in that it was "rationally based" on his perception of the magazine he had recovered from the scene and had the capacity to "assist the jury" in determining whether the magazine belonged to the gun in question. McLean, 205 N.J. at 456.

Sentencing

We defer to a sentencing court's determination and review for an abuse of

discretion.  State v. Bolvito, 217 N.J. 221, 228 (2014).

> [We] must affirm the sentence of a trial court unless:
> (1) the sentencing guidelines were violated; (2) the
> findings of aggravating and mitigating factors were not
> "based upon competent credible evidence in the
> record;" or (3) "the application of the guidelines to the
> facts" of the case "shock[s] the judicial conscience."
>
> [Ibid. (second alteration in original) (quoting State v.
> Roth, 95 N.J. 334, 364-65 (1984)).]

We do not substitute our judgment for that of the sentencing court.  See State v.

Francisco, 471 N.J. Super. 386, 426 (App. Div. 2022) ("Generally, an appellate

court should defer to the sentencing court's factual findings and should not

'second-guess' them.") quoting State v. Case, 220 N.J. 49, 65 (2014))).

On review of the record, we are satisfied the court did not abuse its

discretion in sentencing defendant.  The sentencing court properly considered

the sentencing guidelines and aggravating and mitigating factors.  Although the

sentences imposed on counts one and two were slightly higher than the five-year

minimum prescribed by the Graves Act, they were not excessive.  The sentence

does not "shock the judicial conscience" of the court.

As the parties agree, the trial court improperly imposed sentences on

counts three and four despite the court having merged them with count two.

See State v. Trotman, 366 N.J. Super. 226, 237 (App. Div. 2004) ("a separate

22

sentence should not be imposed on the count which must merge with another offense"). Thus, we remand for the narrow purpose of amending the JOC to vacate the portion of it containing that error.

To the extent we have not addressed defendant's remaining arguments, we deem them without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed in part and remanded in part for entry of an amended JOC consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-3335-23